Good morning, Your Honors. May I please the Court? Stephen Schausberger on behalf of the appellants, Brian Denny, CNCPros.net, Inc., and Automated Solutions, Inc. Appellant Denny requests that this Court vacate the award of attorney fees against him by the District Court, and CNCPros.net, Inc., and ASI requests that this Court remand for the District Court to declare that both of those corporations were prevailing parties in this action and to then determine the proper amount of fees. Both of these main parts up on appeal involve 15 U.S.C. 1117a, the standard for an award of attorney fees under the Atlanta Act. And that provides that a court may, in exceptional cases, award attorney fees. Your Honors, there was nothing exceptional about this case in the lower court. This case was not exceptional simply because the jury found that 5 out of the 15 domain names at issue violated the ACPA, the Anti-Cybersquatter Consumer Protection Act, against Defendant Denny. 10 out of the 15 domain names at issue did not violate the Act. And the jury's finding that CNCPros.net, Inc., which was also a defendant, subject to the same claim of the 15 domain names, did not violate the Act. The jury answered the question on the verdict form, did any of the defendants... With regard to those claims upon which you did not succeed, did the jury find that they actually could have been used by Mr. Denny, or did they just find that there was no showing of bad faith for those claims? As to the 10 that did not violate the Act... As to the 10 where PAS did not succeed, what did the jury find with regard to those 10? Just that there was no liability under the Act, which means they could have just found for those 10 no bad faith, not... In fact, were those the ones you had decided should be turned over before the... or either during or before the trial actually started? Correct. All 15 domain names were voluntarily transferred prior to the case going to trial. Right. Okay. So some... And the jury did not make any finding at all of what happens. I don't believe there's any case law, but what happens if you're found... Right. So all they did was find that the elements of the ACPA weren't met, which may have meant that, okay, well, we don't know if he had a good intent or a mistaken intent or a not bad intent with regard to those 10. Exactly. Okay. But they did find he had bad faith with regard to 5. With 5 out of the 15. Okay. That's correct, Your Honor. And the... And let me ask you another question. I read somewhere in here that there were 36 domain names that had been allegedly squatted upon. Was that part of the record or below? Yes. Okay. Well, let me explain. Plaintiff... I don't care about stuff after the record was complete, but what's in the record? What's in the record is that the jury considered the registration of 21 additional domain names, and that was Exhibit B to what went back with the jury for them to consider. So they were able to look at the 15 domains that were part of the case and also 21 domains that were additionally registered. Each one of those 21 domains also were similar to the 15 that were found not to violate the act as to cncprose.net and also as to the 10 that did not violate the act as to Mr. Denny. What is interesting in this case is that the only common myth that I can ascertain from what the jury did is that the 5 each contained Haas CNC, which is their main website. However, 2 included within the 10 that did not violate the act also included Haas CNC in them. So what's important to note, for your honors, in terms of looking at and determining this case as a whole, whether or not it's exceptional, and if we look at just the fact that the jury found bad faith with respect to those 5, and we say, okay, well, maybe we can understand that it was Haas CNC, but yet 2 that also contained Haas CNC within the 10 did not violate the act, there are no existing aggravating circumstances that can be linked just to those 5 that they found bad faith. Where in the record is there anything that appellee can point to to also show additional exacerbating circumstances, heightened culpability? Your honors, this is not the Lahotae case. Well, you know, are you making your argument now that it has to be more culpability than in the ACPA itself, or you are? Absolutely, for finding attorney fees. Okay. It's an exceptional case. Well, I think there's kind of a legal dispute there, and that the Attorney's Fees for the Lanham Act covers cases that have bad faith and cases that don't have bad faith as elements. So you would have to be arguing that Congress intended that for the ACPA, there is a higher standard for awarding attorney's fees in those other cases. So is that what you're arguing? Your honor, I think that it's very difficult to know exactly which standard should be applied in terms of the buzzwords for exceptional case within the Lanham Act. As pointed out in the briefing, this has been looked at particularly under trademark infringement cases, and we use fraudulent, malicious, deliberate, willful. And none of those are elements of the ACPA. It just requires a bad faith intent to profit. And at the time that this circuit adopted those factors from the Playboy Enterprises case in 1982, the Lanham Act did not yet exist. The Lanham Act, or excuse me, the ACPA Act did not yet exist. It came into existence in 1999. And so where the court comes down in terms of an actual standard is difficult to know, and this is an opportunity for this court to give some definition to that in applying 1117A in an ACPA case. Well, I didn't get a yes or no, but I guess why should the court require more an ACPA case than another kind of trademark Lanham Act type violation? You said you want us to do something, so tell me why you want us to do this. Well, the more question is more than just the bad faith element of the ACPA, because to just prove an ACPA case, you just have the base standard of a bad faith intent to profit, and that's it. However, in order to get fees under 15 U.S.C. 1117A, it is not a mandatory that if you have just shown bad faith, you get fees. Rather, it's a may in an exceptional case. What about Gracie? And in Gracie, that was a trademark infringement case, and the court, the jury found willfulness as a part of that, which was more than the underlying claim to just prove trademark infringement. Except that the court thought willfulness was an element. Except, Your Honor, the distinction, again, is to prove trademark infringement, one does not have to show willfulness. I know, but there was a mistake made, wasn't there, in that case? And it was required? I thought. Maybe I'm wrong. I didn't read that into the decision. What I focused on is the fact that there was more shown beyond just meeting the element of trademark infringement, and that is the willfulness. Don't you think on Gracie, it stands basically for the proposition that bad faith could be enough, not that it is automatically enough? Absolutely, Your Honor.  We're limited in time, and I want to ask a couple questions, maybe along the lines of Judge Rustani. I'm trying to understand your focus on the word exceptional. If we consider all Lanham Act cases, it isn't illogical for all ACPA cases to be exceptional, is it? I mean, the ACPA is basically a subset of the Lanham Act, isn't it? It's a subset of the Lanham Act. It's included within the Lanham Act. However, I believe that the court would be going beyond what Congress intended if, in any ACPA violation case, no matter what, regardless of looking at the circumstances of the case as a whole, automatically awarded fees, because that's not what it looks like. But I don't read what the district court did with that, because I think in addition to the – I think what she said is bad faith alone could support and create an exceptional case. But she also said that he – what Denny was doing was registering these domain names in violation of the ACPA in order to divert consumers' interest to his website as opposed to Haas. And we call that initial interest confusion, which is an additional Lanham Act violation. And she said, so at the time he did that, the jury could well have found that he intended to create initial interest confusion, diverting people from the other website, and that is an exceptional circumstance, because that could be an additional violation of the Lanham Act. And, Your Honor, I respectfully disagree in terms of the – Judge Marshall, the district court judge, did not make that finding in her decision that was argued by Haas in its briefing. No, she says, although Denny testified that he intended to use the domain names to operate websites to actually service Haas products as opposed to divert consumers to his own products, the court cannot say that the jury credited this testimony as the jury still found Denny liable under the ACPA. The court finds sufficient evidence in the record to establish this case is exceptional. So she's rejecting the argument that he did it with a – to supplement the service of Haas. And I read that to say she was making a comment on what the jury possibly could have done with that, given the way that it came down in this decision. But in the record, there was not any evidence at all that any of the websites were diverting traffic from Haas' websites because they were parked. They weren't live, active websites. But that's irrelevant to an actual ACPA violation, because it's the registration that's the violation. It's not whether or not it actually grows to be a live website. But it can't redirect. It can't have a link unless it's a live website. Right, but they're talking about his intention. But, again, there's no evidence of a redirect, like in the Lahoti-Barachek case. I'd like to distinguish that case, because in that case, the Ninth Circuit did – Well, he hadn't put the content in yet in order to get the redirection, right? He's squatting on these domains, correct? No, they're parked. Five that were found – all 15, yes, were parked. They were reserved. They were reserved. Is that the meaning? Maybe I don't understand squatting on domain names, but I thought it means that you get them out of the control of anybody else. You've parked on them, you've squatted on them, and nobody else could use them. And you might do that in order to kind of extort somebody to get the domain name back, or you might do it just in order to redirect traffic when you put content in. Have I got this wrong? You don't have it wrong, Your Honor, but that's going towards one with that – just like in the Lahoti case where they registered 450 of them, and when Barachek asked to give it back, it said, Pay me $72,000 if you don't get it back. Well, it's not as if – In this case, none of the domains were ransomed. This isn't a cyber – No, they didn't – he didn't do it that way, but he was – Look, here's what the district court said that Haas said. The jury's verdict in case the defendant acted with bad faith intent in registering five domain names. Denny's testimony that he intended to use the domain names so that when a person searches Haas, the person is directed to Denny's website, okay, that he intended to do that. The fact that Denny continued registering domain names after receiving cease and desist letters, and that he registered a total of 36, 10 of which were registered after the lawsuit started. I mean, the district court says, These are the allegations, and I've looked at all this evidence, and we've got the jury's finding, and I think there's sufficient evidence. So it's not just like, Okay, this is an ACPA case, and therefore you needed bad faith findings, so now there's attorney's fees. It seems to me the district court did a little more. Let me ask you, what's the standard of review in determining – in reviewing that decision from the district court? Is it abuse of discretion or de novo? De novo. And – That I don't get either. Can you tell me why – How does that work? Your Honors, the Ninth Circuit has said exactly that in the classic media case and in the earthquake sound case. But what does it mean? Which I can quote to the court. No, no, don't quote it. What does it mean? What you do – what does a court do when it does that? It looks at the record fresh. As a matter of law, it needs to – this court needs to first determine whether or not this case is exceptional to whether it even goes into the next step in terms of can a ward be made under 1117A. And what you think this court should do is not just test for sufficiency for finding exceptional, but actually go back and look at the evidence and see whether reweighing it, we find it is exceptional. That's what you think de novo means. Okay. Yes, as a matter of law. I didn't mean to squat on your question. And that's where I submit that, Your Honors, when you look at this record and when you look at the case as a whole, that it was not exceptional. How on earth could a case be exceptional? And also exceptionality can be looked at from the standpoint of whether or not the defense was exceptional. Or on the flip side, which I'm about to argue, a plaintiff can be exceptional. No, you're not about to argue because you are five minutes over your time and you're about to sit down. Okay. You preserved your arguments by writing about them in your brief. Okay. Thank you. Does the court have any additional questions? No. You're five minutes, five-and-a-half minutes over your time, so that's it. Thank you. Thank you. Good morning, Your Honors, and excuse the court. Bob Dado for FLE Haas. I don't want to be redundant of the discussion. I want to ask some questions. And since it's limited time, let me go over this. Mr. Denny registered some of the disputed domain names and then received a cease and desist letter, correct? Correct. All right. After initially receiving the letter, he thought he had a right to the domains and he registered more names, correct? Correct. All right. At some point, Mr. Denny gave up and started to hand over the domain names. At some point, right. Correct. All right. When your client, or you, filed the complaint, Mr. Denny had turned over the control of 13 of the 15 domain names to Haas, correct? I think that's correct. All right. About a month after the complaint was filed, Mr. Denny turned over the final two domain names, correct? Not positive timing, but yes. About? Correct. A month, okay. A month after filing the complaint, Haas has control of all of the disputed domain names, and the domain names had never been used, correct? That I'm not sure of. Well, okay. Okay. Haas could expect at most $5,000 per domain name, correct, pursuant to the statutory damages? Statutory scheme. Uh-huh. But your client made the decision to spend over $400,000 in legal fees taking this case to trial. Is that correct? I believe those were the figures, correct. All right. I'm trying to understand why this would be an exceptional case for attorneys' fees, or I mean for the fees that we have to determine here today under those circumstances. And obviously, that was the argument that Denny made, among the arguments that Denny made in the district court. However, the district court found that nonetheless, Denny's conduct was sufficiently culpable for the reasons that have already been discussed this morning to overcome those facts. And the question is whether the record supports that determination. And Haas admits that it does. Haas admits that what? That it was worth the $400,000. I mean, I'm just trying to figure out, you made a decision here that you had everything you wanted a month after you filed approximately your complaint, and some of it before then. I don't understand what the point was to proceed further and to make that costly decision, where you would have only gotten $15,000 or $25,000. I don't remember what the amount was in the statutory scheme. And I wasn't there at the time. But the problem, as the record demonstrates, is that the conduct unfortunately continued. That was one of the reasons. Where did the conduct continue? Talk to me about that. In terms of subsequent registrations, which is in the record and we talked about earlier, is the fact that the offending conduct here is coming up with the domain names Bynum and Cybersquatting. And unfortunately, it went beyond the $15,000, and it continues now. And that was a huge issue. That continues to be a problem and certainly was one of the factors the district court cited in its order in terms of why this case was exceptional. So putting aside subsequent litigation. Yes. So we have in the record that Denny registered and set on 10 Haas-related domain names sites after the lawsuit was filed. Did he turn over those 10 to Haas as well? I'm sorry, Your Honor. I'm not certain of what the ultimate disposition of that group of 10 that you're talking about is. I don't know. Well, what's in the record? I'm just not certain on that. Is it in the record? I don't know what the disposition of those others are. I'm not even sure those are in the record. The 15 that we talked about, sure, that is in the record. I'm just not certain about those additional ones. Well, the district court mentions them in her order. The fact that Denny registered a total of 36 domain names using the Haas trademark, 10 of which were registered after this lawsuit was filed. Right. What I don't know is, and I know that group we're all talking about, I just don't know what the ultimate disposition was at the time the court ruled. I don't know. I'm not sure if it's in the record. So the jury knew about that. The jury knew about them. Okay. And that information was before the jury for what purpose? For their consideration of the bad faith? Why was it before the jury? I believe that's what it was. That whole group got in, and it was a trial exhibit, I think, relevant to that claim, yes. And so that Wattec Company Limited case, are you familiar with that? Yes. Okay. Yes. Basically, it's my understanding that it holds that whether a case is exceptional is a question for the judge, not the jury. I'm aware of that language, yes. Okay. Doesn't that mean that the jury verdict here isn't dispositive? Do you agree with that? I agree with that, and it's not here. I mean, I understand that Denny's central argument is basically what the district court did was looked at the jury verdicts and said, fine, you get attorney's fees, and that's not a fair reading of her order. And that's what our contention is, is she went well beyond the jury's finding as set forth in the order. That was our principal argument that I wanted to make sure the court understood, and obviously it does. So you concede that the jury's finding alone is not enough to make this case exceptional? No. But I would say that based on this record, the fact that, in other words, we're talking about the Gracie decision. Yes. We'd embrace the Gracie decision. The Gracie decision, we win. But we don't need to go that far because we have other evidence that the district court cited, all of which leads to the end result of an affirmance of the district court's order. And I'm not trying to skate your honor's question. I hope I'm answering it honestly. We have enough here in order to have it affirmed. There's a second lawsuit, correct, apparently? Correct. But it's not really relevant to this case. I mean, if you win in that case, you know, it may be exceptional. Or it may not, right. But we wouldn't credit your unproven allegations in that case here, correct? No. And do they overlap with anything that was presented in this case, those ten claims that you're talking about that we're not sure about in the record? Overlap. I mean, they are distinct from the ones that have already been ruled on. Well, ruled on the 15 or ruled on the 11 that may have been considered for the bad faith determination? Those are analytically distinct from whatever went on before. I'm sorry. What is analytically distinct from what went on before? The present lawsuit involves different domain names, none of which were a part of the first trial. So there's no overlap. So there's no overlap. I'm sorry, I didn't understand your question. There's no overlap. They are distinct. All right. I had a question. Yes, I'm sorry. Because I found the language in some of these cases strange. I mean, they talk about it's de novo review, but then they talk about sufficiency of the evidence. So I wasn't exactly sure what exceptional is a legal question means and how the court does this. Right. So what do you think? And obviously I found the same confusion because there certainly is language that would make it appear as de novo, but that's not what courts are doing. If you read the whole case, they're doing what reviewing courts generally do in a situation where a trial court imposes fees. And they're looking for substantial evidence in the record that the district court credited that would support whatever finding we're talking about. I think that's what the standard is because that's what courts do, the unfortunate rubric sometimes notwithstanding. So it's really a mixed question of law and fact is really what it is. Yes. Because exceptional is a legal conclusion. Yes. And then you have to look at the facts. Right, then you have to apply it. So it's a mixed question of law and fact in which we would review. Right. And for example, not to get too academic here, it's possible that a district court, for example, could misunderstand what exceptional was. And I would think that this court would review that de novo. It's like, no, no, no, you didn't apply the right standard. Yes, this court has thrown those out. It's thrown those out. Exactly. As opposed to, okay, the trial judge got the concept right of exceptional, cited the right language, seemed to understand what was going on, and then it becomes much more deferential. It's a question of is there enough evidence that the district court credited that would support this ultimate conclusion. I think that's what the standard is. At least that's what our position is. That's the best reading I can come up with from these somewhat disparate cases. Unless the Court has further questions, we would submit. Okay. This case will be submitted.
judges: Restani, Wardlaw, Murguia